The DRAFT OF PRESENTING THE LISTING text of  present on the presentation of the worker colleague employee employee on the    of the sub  front of  sub fore front of the  fore front But I earlier whereas above all purpose pablo libby Which Is Also Review reviewable De Novo By The Co Court While Our Briefs Address Several Issues Of Mistake Of Law Major Errors Of Law I Would Like To Find Improperly Utilized Extrinsic Evidence And Disputed Issues Of Fact In Support Of Its Summary Judgment Motion You All Seem To Be Arguing Past Each Other Or At Least Not Arguing To The End Of The Inquiry ? That Is A Major Issue Your Honor In That The Parties Did Not The Navy Did Or The Civil Yard Did Not Understand The Navy Interpreted The Contract To Preclude Any Access To The Trainer During A Period Of Time ? That Is A Disputed Issue Of Fact ? How Do You Get Around The Multiple Admissions In Which That Is What They Said To Be ? Those Multiple Admissions Your Honor Were One Was A Navy Version Of A Conference Call Which Was An Internal Memo Which Was Not Reflected In The Conference Call And Moreover Was Disputed During  Deposition Testimony By The Participants In That Conference Call ? The Other Issue A Navy Person Who Attended A Site Visit Three Weeks Before The Solicitation Was Issued Said That He Emphatically He Gave A Declaration Saying That He Emphatically Said There Would Be No Access During This Period Of Time ? The Symbionics Attendee Of That Site Visit Put In His Deposition Testimony And A Declaration Stated That The Navy Person Did Not Make That Statement That The Navy Person Only Said That Access Would Be Restricted To Four Compartments Compartments One, Two, Three, And Five. The ? Do I Understand Correctly That That In Your  You Are Saying That Shows A Genuine Issue Of Material Fact ? Absolutely. In Response, You Have Mr. Gustafson, Who Is An Employee Of Symbionics, He Is Saying Something Completely Different. Yes. We Dispute That. And We Had Listed ? You Dispute That Mr. Gustafson Said These Things ? Yes. We Dispute ? Emails ? I'm Sorry. His Email, Which Was Directly After This Site Visit, Was Only Directed To Symbionics Work Doing The PLC Work, The Controller Work. And That's What He Testified In His Deposition And His Declaration. The Board Said They Did Not Believe His Declaration And His Deposition Testimony Because In The Board's Opinion, Symbionics Did Not Need To Be At The Trader Doing Any Removal Equipment. And That Is A False Assumption By The Board. The Statement Of Work Required The Symbionics Be At The Site Doing Equipment Replacement Surveys And A Great Deal Of Work On Site. And That Was In The Statement Of Work. And Also, Symbionics' Proposal Indicated That It Was Planning To Be On Site Doing Removal And Other Work. So The Judge Just Pulled This Out Of The Air That Symbionics Had No Need To Do Any Removal Work And No Need To Be On Site. And Therefore, He Discounted The Credibility Of The Symbionics Witness And The Author Of The Email Who Explained That Email As Not Applying To The ESP Doing The Non-PLC Work. Understand That This Contract Required Primarily For Eight Navy Trainers It Was Replacement Of The PLC Control Systems. And That Work Was Going To Be Done By Symbionics. The One Trainer Great Lakes Had Been Out Of The  For A Long Time. And That Non-PLC Work Was Going To Be Done By Symbionics Subcontractor. In Fact, One Absolutely Critical And Non-Disputed Fact That Was Totally Ignored By The Board Was That One, There Was Nothing In Writing Anywhere Both Before The Solicitation, Before The Proposals, Or Anytime During The Contract Performance That Said Symbionics Cannot Have Access During This Interim Period. What About The Emails Between Symbionics And The Sub Where They Said How Could You Not Know That That Was After That Was When Issues Came Up After The Performance And Then Symbionics Looked Hard At The Contract And Said There Is Nothing In The Contract That Says We Have No Access. Are You Referring To The October 14th Email From Don Holman That Said It Was Very Clear That We Would Be Given Access At Certain Dates But At That Point It Would Be Turned Over. Is That The One You Are Referring To? That Was One Of Them. And Then When That Was Reviewed By Symbionics They Said Wait A Minute. The Only Restraint On Access Is In Those Four Compartments. One, Two, Three, And Five. What I Would Like To Refer But This Is A Symbionics Email. It Is Clear From The RFP That You Would Not Have Access. And His Testimony In The Deposition Said That That Was His Initial Reaction When He Was Told By ESP That People At Great Lakes Were Saying There Would Be No Access. He Looked At That. But Then When They Reviewed It Carefully And This Came Out In His Deposition Testimony When They Reviewed The Contract Carefully, Right After That Came Up In October. Before That Came Up I Think About The Fifth Of October And Then There Was A Presentation On The 20th And 21st At The Performance Post Award Conference. October 20th And 21st. And That's After Between October 5th And October 20th Contractors Awarded September 25th. But In That Post Period After The Contract Symbionics Carefully Reviewed The Contract With Their Subcontractor And At The Post Award Conference On 20 And 21st They Took The Position That The Contract Absolutely Does Not Preclude But On October 15th Mr. Gustafson Responded  ESP's Question And Said Yeah I Recall Them Saying That When We Went To The Industry Day Which Occurred Before The Solicitation. I Mean Before You Put In The Bid. And Mr. Gustafson Said That When They In His Testimony His Deposition And His Declaration Said That When He Reviewed Everything He Was Convinced That The Only Statement Precluding Access Was To Those Four Compartments. But I'd Like To Use Just A Little Time On This Critical Absolutely Critical Fact That The Board Overlooked Which Was Prior To The Proposals In July Of 2015 And Offer Or Ask A Question About Access To The To A Particular Loading Dock. This Was A Question That Was Asked By A Party That Was Bidding But Did Not Receive The Yes. Another Offer Or But The Official Answer To That By The Navy Stated That There Was Only Restricted Access Truck Access To One Door In The Facility After January 2016. That Was The Answer Which Was Given To All Offer Wars Is 3633. And We Discussed This Extensively In Our Reply Brief At 2223. If The Navy Is Telling All The Offer Wars That There Is Only One Restriction And That Is To One Loading Dock. If The Navy Had Actually Had This Interpretation That There Was A Total Restriction For This Four And A Half Month Period, Surely That Would Have Been Contained In That Answer Rather Than Simply Saying There Is A Restriction To One Loading Dock.  Was My Last Question. Thank you. You Are Into Your Revital Time. If You Can Continue I Will Save It As You Wish. Ms. Topline. May It Please The Court. We Respectfully Request That You Affirm The Decision Of The Court. The Navy Had Reasonable Grounds To Believe That They Could Not Complete This Contract On Time And They Properly Issued A Cure Notice. They Could Not Complete This Contract Without Access To The Trainers During The Interim Period. Well, I mean, you still have to address the threshold question of whether the access issue was a material alteration to the terms of the contract. That would go to the excuse, Your Honors. That would be symbionic excuse for not being able to comply with the schedule and not be able to complete the contract on time. We had grounds to believe they could not complete in context with our interpretation. Asked them for adequate assurances. They did not give them. Instead they raised an excuse which said our interpretation of the contract is proper. Right, but then that would change whether or not any termination would be for default versus for convenience. Yes, Your Honor, but they have the burden to prove that default is excusable and they cannot. As the Court was noting through them, through this discussion with Symbionics, Symbionics clearly knew of the government's interpretation. Their counsel admitted it today. He admitted the initial reading of that contract. They knew there was no access. What about their argument that then later they looked at the contract, they analyzed it and said hey, this isn't clear at all. And so how does that play into their interpretation   Well, that's a slightly different reason in the sense that it would show that they did not have the interpretation of the contract at the time they bid. As your opposing counsel admitted, they interpreted the contract as meaning no access at the time they bid. Companies seeking to make a claim on a contract have to show they have the interpretation at the time they bid. So cases like the Blinderman construction case, Edward R. Martin, those cases are looking at the interpretation at the time of entering the contract. Does it mean that companies seeking to enforce the contract at the time they bid assume there was no access? No, he said there's a material issue of fact on that question. Well, with all due respect, he actually said that at the time they knew there was only no access for certain purposes or just no access to certain compartments, but not a complete no access for the purposes of their subcontractors. Well, their own statements established that they actually knew that there was no access based on their own statements. Whether it does or doesn't, that doesn't change what their argument is, which is that it was a material dispute of fact. We don't believe it's a material issue of fact, but even if it were, Your Honor, the law is clear of this federal court's precedent that if an opposing contractor knew of an ambiguity and knew that the government was fully unaware of this alternative interpretation, they certainly should have had knowledge of the government's alternative interpretation, and they cannot choose not to inquire, not to put the government on notice, knowing that the government was fully unaware of this alternative interpretation. What is your response to the government's response to the contractor question on page 3633 of the appendix? The government clearly, the Navy clearly answered the question that was presented. That question was purely dealing with access restrictions to the south loading dock, and they answered that question with regard to the south loading dock. As I just indicated, the Navy had no notice of any other ambiguity, no notice of any other issue to think that there was any reason to go beyond it. They answered the question and addressed the question which specifically asked for access restrictions to this one area, and they answered that question. And well, why wouldn't you mean, I guess it's a fair argument that the other side could say, wait, if we're talking about access restrictions, and why didn't you just say nobody's going to have access to any of this stuff, rather than say that particular loading dock? I certainly cannot say that. I was not the one asking that, but they  the question that was asked, and if Symbionics had any question with regard to access restrictions or wanted to clarify anything after that fact, they certainly could have done it. Symbionics had the opportunity to clarify access restrictions just like this other offer. They actually had two opportunities because there were two sets of questions and answers. After the first site visit, there were questions and answers. After that first email where he said we have six weeks and we have to be out, after knowing that there were hard milestones, after knowing that there was another contractor to coordinate around, they chose not to ask that question, and then they chose not to bid. The Navy then changed the evaluation criteria, reissued the solicitation, offered a second round of site visits which Symbionics chose not to attend. They also chose not to have their subcontractor ESP attend. The Navy also then did a second set of questions and answers, and at no point in time did Symbionics ever see clarification of this. So if Symbionics truly believed that it needed to be clarified whether there were additional access restrictions, they certainly had the opportunity and chose not to do so. As I said, a contractor who is aware of the fact that there's a potential issue in a contract is incumbent upon them, if they're aware that the government is unaware of this potential alternative interpretation, has to inquire. They have the duty of inquiry and the failure to do so. Is it your position that the contract is ambiguous or is it your position that the contract is unambiguous? Our position is that the contract is ambiguous in the sense that it certainly leaves a gap. In the sense that it certainly does not on its face define what happens in that interim period. It certainly does not leave that gap. It talks about an installation period and does not say you can share space. We would say that this in and of itself creates ambiguity. The issue here is that symbionics knew that. Is that a patent ambiguity or a latent ambiguity? Our position is that it is patent because it is evident from its face that there is this gap. But even if it were not patent, the duty of inquiry can be imposed as I noted when the contractor knew or should have known this potential ambiguity and chose not to exercise its duty of inquiry and chose not to put the patent in question. We don't want a tenery problem here. The board certainly made some conclusions and did weigh some facts. We would certainly say once you start looking at this                issue, there is a  order under a master contract. The master contract had that clause so it is automatically in the task order. The solicitation and this contract also said that there would be a partnership meeting with the contractor. When this issue first came up at the post-award conference, the Navy saying you don't have access during this period, the Navy said we will work this out at the partnership meeting with the contractor. In the subsequent phone calls on November 3rd, the Navy also repeated in fact they sent an invitation to symbiotics that will address this mutual access with the partnership meeting. That was also addressed at the November 3rd conference call. This issue of mutual access can be addressed at this partnership meeting which was then canceled or at least subsequently symbiotics was disinvited. In the depositions of the contracting officer and all the Navy personnel, they all acknowledge that the contract does not contain any provision that specifically restricts the contractor's access to the trainer at any time. In those citations Doesn't that make it ambiguous as opposed to clear We don't think it's ambiguous at all because when you read F1 with appendix A, F1 says you must do work in two periods. And appendix A specifically defines the work to be done in those two periods and leaves the vast majority of work to be done at any time during the contract. So we don't think F1 was ambiguous at all. And the only I'd like to give you the site. In appellate's main brief at pages 12 and 34, we cite all the deposition testimony where the Navy acknowledged that there's nothing that says you can't have access. Also, Symbionic's attendee at the site visit testified and submitted declarations, and that's in appendix 1733 to 1736, 1627 to 1632, and then 2165, 2168, that his handwritten notes and the information that he got at the site visit was only there would be restrictions to four specific compartments. The handout at the site visit,  appendix starts in appendix 858, and in that appendix at 872, 873, and 874, only the appendix was listed. Only those, the work, again, that was in appendix A, for those, primarily for those four compartments, one, two, three, and five, those are the only things that are listed, and there is nothing in this handout that indicates there's a blanket restriction. Moreover, it has to be observed and  as    Thank you. Thank you.      If there's any questions of the public, we'll start the hearing tomorrow. So, if there are any questions at all, please ask them   Thank you.